# 𝔍𝔫 𝔱𝔥𝔢 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 ℭ𝔬𝔲𝔯𝔱 𝔣𝔬𝔯 𝔱𝔥𝔢 𝔖𝔬𝔲𝔱𝔥𝔢𝔯𝔫 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 𝔬𝔣 𝔊𝔢𝔬𝔯𝔤𝔦𝔞 𝔅𝔯𝔲𝔫𝔰𝔴𝔦𝔠𝔨 𝔇𝔦𝔳𝔦𝔰𝔦𝔬𝔫

| | |
|---|---|
| REINA RODRIGUEZ and ALEXIS PARET, <br><br>  Plaintiffs, <br><br> v. <br><br> NARMADA ASSOCIATES, INC., d/b/a OCTANE OF DARIEN, <br><br>  Defendant. | ) ) ) ) ) ) ) 2:22-CV-18 ) ) ) ) ) ) |

**ORDER**

Before the Court is Plaintiffs' motion for entry of default judgment against Defendant Narmada Associates, Inc., d/b/a Octane of Darien ("Defendant" or "Defendant Narmada"). Dkt. No. 11. Upon due consideration, Plaintiffs' motion for entry of default judgment is **GRANTED**.

The Clerk entered default as to Defendant Narmada on July 1, 2022. Dkt. No. 8. This entry constitutes Defendant Narmada's admission of Plaintiffs' "well-pleaded allegations of fact." Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank, 515 F.2d. 1200, 1206 (5th Cir. 1975). Defendant Narmada, however, "is not held to admit facts that are not well-pleaded or to admit conclusions of law." Id. As such, before entering default judgment as to damages, the Court "must ensure that

the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." Tyco Fire & Sec., LLC v. Alcocer, 218 F. App'x 860, 863 (11th Cir. 2007); see also Cotton v. Mass. Mut. Life Ins. Co., 402 F.3d 1267, 1277-78 (11th Cir. 2005).

According to Plaintiffs' Complaint, on or about May 24, 2020, Plaintiffs traveled to Defendant Narmada's place of business located at 13109 Georgia Highway 251 in Darien, Georgia. Dkt. No. 1 ¶¶ 2, 7, 9. As the owner of the business, Defendant Narmada was responsible for maintaining the property, properly marking the business's ingress and egress, and repairing the business's ingress and egress. Id. ¶ 8. As Plaintiff Reina Rodriguez ("Plaintiff Rodriguez") entered Defendant's store and was attempted to traverse the front threshold, she tripped and fell on a raised doorframe at the entrance of the building. Id. ¶ 10. Plaintiff Rodriguez was not able to discern the height differential between the threshold and the exterior sidewalk given the condition and appearance of both the threshold and exterior sidewalk, and there were no signs or other cautionary materials in use to warn Plaintiff Rodriguez and other patrons of the height differential. Id. ¶¶ 11-12.

According to the Complaint, Defendant Narmada knew or should have known about the dangerous condition of the threshold and sidewalk but failed to warn Plaintiff Rodriguez and other patrons and failed to take adequate steps to mark, repair or otherwise maintain the property. Id. ¶¶ 13-14. The dangerous condition of the threshold and sidewalk was not readily apparent to Plaintiff Rodriguez, and it would not have been readily apparent to other patrons. Id. ¶¶ 15-16. As a result of her fall, Plaintiff Rodriguez sustained severe and permanent injuries. Id. ¶¶ 18, 32-33. Plaintiff Alexis Paret ("Plaintiff Paret"), Plaintiff Rodriguez's husband, also claims damages for loss of consortium. Id. ¶ 30. Defendant Narmada neither appeared nor presented a written objection to the entry of default judgment in favor of Plaintiffs.

When considering default judgment, the Court must examine (1) jurisdiction, (2) liability, and (3) damages. See Pitts ex rel Pitts v. Seneca Sports, Inc., 321 F. Supp. 2d 1353, 1356 (S.D. Ga. 2004). In this case, the Court is satisfied that it has personal and subject matter jurisdiction, as established by the Complaint. Dkt. No. 1 ¶¶ 1-5. Plaintiffs are citizens of Florida, and Defendant Narmada is a citizen of Georgia. Id. ¶¶ 1-2. The amount in controversy exceeds $75,000. Id. ¶ 4. Plaintiffs served

3

Defendant Narmada through its registered agent, Mital Bava. Dkt. No. 6.

The facts contained in the Complaint demonstrate that Defendant breached a duty owed to Plaintiffs. See Dkt. No. 1 ¶¶ 7-18. Because Defendant has admitted these facts, Defendant is liable for Plaintiffs' injuries. Finally, the Court is satisfied that the allegations in the Complaint and the evidence in the record demonstrate Plaintiffs' damages.

Plaintiffs seek five categories of damages: (1) past medical expenses; (2) future medical expenses; (3) Plaintiff Rodriguez's past pain and suffering; (4) Plaintiff Rodriguez's future pain and suffering; and (5) Plaintiff Paret's loss of consortium. Id. ¶¶ 30, 32-33. In support of Plaintiffs' damages, Plaintiffs have submitted affidavits of both Plaintiffs and Dr. Bryan Thomas, Plaintiff Rodriguez's treating physician, as well as supporting documentation. Dkt. Nos. 16-1-16-11.

The evidence shows Plaintiff Rodriguez was forty-six years old at the time of her fall. Dkt. No. 16-1 ¶ 3. Prior to her fall, Plaintiff Rodriguez led an active lifestyle and operated a towing business with her husband. Id. ¶¶ 4-10. In connection with operating the towing business, she would assist with loading vehicles, climb on and off the tow truck's flatbed, and climb under vehicles as needed to secure them

4

for transport. Id. ¶ 4. The evidence shows that she was actively performing these tasks up until the time of the fall. Id. In the past, Plaintiff Rodriguez also worked as a nail technician. Id. ¶ 5. Additionally, before her fall, Plaintiff Rodriguez could actively engage in a wide array of activities with her family such as camping, four-wheeling, fishing, and boating. Id. ¶ 8.

As a result of Plaintiff Rodriguez's fall on May 24, 2020, she landed on both of her hands and knees. Id. ¶ 14. Plaintiff Rodriguez immediately experienced severe pain in both her hands, both of her knees and low back. Id. The day of her fall, emergency medical personnel were called to the scene to examine Plaintiff Rodriguez. Id. Once she and her husband returned home to Florida, she followed up with a local chiropractor. Id. ¶ 15. She participated in physical therapy for several weeks, but it did not provide any noticeable relief. Id. Thereafter, she was referred to an orthopedic group and underwent various diagnostic studies. Id. ¶ 16.

Plaintiff Rodriguez was seen by Dr. Bryan Thomas and other physicians to address her various pain complaints. Dkt. No. 16-6 ¶¶ 4-6. Dr. Thomas is board certified in pain medicine and physical medicine and rehabilitation. Id. ¶ 2. Dr. Thomas has provided opinions about Plaintiff Rodriguez based on his education, training, and experience, as well as

5

a physical examination of Plaintiff Rodriguez's injuries. Id. ¶ 3. Dr. Thomas's opinions are to a reasonable degree of medical probability. Id. Dr. Thomas avers that he began seeing Plaintiff Rodriguez in 2021 for her lower back pain complaints. Id. ¶ 5. Plaintiff Rodriguez told him that prior to her fall on May 24, 2020, she had not experienced any trauma to her lower back, she had not experienced any ongoing pain in her lower back, and she had not received any treatment to her lower back in the year prior to her fall. Id. Additionally, Plaintiff Rodriguez told him that after her fall, she experienced consistent and significant pain in her lower back. Id. She also complained of numbness, tingling and weakness in her lower extremities. Id.

A lumbar MRI performed June 11, 2020 revealed disc herniations at T11-12, L3-4, L4-5 and L5-S1. Id. ¶ 7. Over the first six months after Plaintiff Rodriguez's fall, she received a series of epidural steroid injections in her lower back to alleviate the pain. Id. ¶ 8. She also received multiple sacroiliac injections. Id. Unfortunately, according to Dr. Thomas, the injections did not offer any long-lasting relief. Id. Over time, Plaintiff developed pain in her lower back that radiated all the way to the bottom of her feet. Id. ¶ 9. She was advised she needed a two-level transforaminal lumber interbody fusion at L4-5 and L5-S1, a right lumber

6

laminectomy and a nerve ablation. Id.  Plaintiff Rodriguez ultimately underwent an L5 and S1 intracept basivertebral nerve ablation, bilateral L3 through S1 radiofrequency ablation, bilateral S1 through S3 radiofrequency ablations of the sacroiliac joint, and right L5 hemilaminectomy with right L4-5 and L5-S1 medial facetectomies and foraminotomies. Id. ¶ 10. After this procedure, Plaintiff continued to experience lower back pain. Id. ¶ 11. As a result, Plaintiff was advised to undergo physical therapy, a microdiscectomy at L5-S1 and/or fusion at L5-S1. Id.

Over time, Plaintiff Rodriguez also developed right hip pain. Id. ¶ 12. As a result, she underwent a right hip MRI, and Dr. Thomas administered a right greater bursa injection. Id. She had also previously received two bursal injections with only minimal relief. Id. Because of Plaintiff's ongoing low back pain complaints, she also received bilateral lumbar medial branch blocks at L2, L3, L4, and L5. Id. ¶ 13. She obtained very little relief, and the relief was short term (i.e. days). Id.

Based on his education, training, and experience, as well as his examination and treatment of Plaintiff Rodriguez, Dr. Thomas testified as follows:

7

1. More likely than not, Plaintiff Rodriguez's lower back and hip pain complaints were caused by her fall on May 24, 2020, id. ¶ 14;

2. More likely than not, to the extent Plaintiff Rodriguez had any degenerative changes going on in her lower back prior to the May 24, 2020 fall, her fall caused those changes to be symptomatic, thereby causing her significant pain, id. ¶ 15;

3. More likely than not, Plaintiff Rodriguez's care and treatment were reasonable and necessary, id. ¶ 16;

4. More likely than not, if Plaintiff Rodriguez continues to experience ongoing, significant pain in her lower back, undergoing a fusion at L5-S1 would be reasonable and necessary to alleviate those pain complaints, id. ¶ 17;

5. More likely than not, Plaintiff Rodriguez will continue to require anti-inflammatory and pain medication to assist in controlling her pain for the rest of her life, id. ¶ 18;

6. More likely than not, Plaintiff Rodriguez will continue to experience low back pain complaints indefinitely, and she will continue to have some limitations with respect to her activities of daily living for the rest of her life, id. ¶ 19.

The record also establishes that given her ongoing right knee and hip pain, Plaintiff Rodriguez received multiple steroid injections. Dkt. No. 16-7 ¶¶ 10-11. She also underwent a right knee arthroscopy on August 5, 2020. Id. ¶ 8; Dkt. No. 16-4 at 4. Even since the procedure, Plaintiff Rodriguez continues to experience right knee pain. Dkt. No. 16-7 ¶ 9.

To date, Plaintiff Rodriguez continues to be in significant pain and takes pain medication on a daily basis. Dkt. No. 16-1 ¶ 21. Dr. Thomas has testified that Plaintiff Rodriguez will continue to experience low back pain indefinitely. Dkt. No. 16-6 ¶ 19. As a result of this testimony, the Court may infer that Plaintiff will continue to be in pain for the rest of her life. The "Annuity Mortality Table for 1949, Ultimate," establishes Plaintiff Rodriguez's life expectancy to be eighty years old. Dkt. No. 16-8.

The evidence shows that to date, Plaintiff Rodriguez has incurred medical expenses in the amount of $253,606.61. Dkt. No. 16-4. The amount of the expenses appears to be reasonable and necessary based on the medical care and treatment provided to Plaintiff Rodriguez. Plaintiffs also produced evidence that Plaintiff Rodriguez's doctors recommended she undergo transforaminal lumbar interbody fusion at L4-5 and L5-S1. Dkt. No. 16-5. The surgical estimate for said procedure is

9

$52,500. Id.  This amount also appears to be reasonable and necessary.

According to Plaintiff Rodriguez, as a result of the fall, she continues to be in severe pain on a daily basis. Dkt. No. 16-1 ¶¶ 21-33. She has difficulty bearing weight, standing, walking and performing activities of daily living. Id. ¶¶ 24-25. She has difficulty being intimate with her husband. Id. ¶ 29. She lives in constant pain because of her injuries. Id. ¶ 21. She can longer help her husband with the towing business, and she has difficulty performing nail services. Id. ¶¶ 26-27. Because of her limitations that her injuries have caused, she also has become very depressed. Id. ¶ 28. The physical and emotional injuries she has suffered have detrimentally affected her marriage as well as the entire family unit. Id. ¶ 30. She can no longer engage in many activities that the family used to enjoy, like four-wheeling and camping. Id. She also has difficulty traveling long distances which makes it virtually impossible for her family to go on vacation unless they go somewhere close to home. Id. ¶ 31.

Plaintiff Paret testified that Plaintiff Rodriguez is not the same person he married. Dkt. No. 16-9 ¶¶ 10-17. He describes her as being active before the fall, but now she is moody and depressed. Id. ¶¶ 3-6, 14.  He testified that

10

sometimes she cannot even get out of bed because of the pain she is experiencing, and she has difficulty performing even basic activities such as household chores. Id. ¶¶ 11-12. Plaintiff Paret has also indicated that their intimacy has suffered because of Plaintiff Rodriguez's injuries and the constant pain she experiences. Id. ¶ 15. Because of the nature of her injuries and pain, it is difficult for the family to engage in activities together because many of the activities they used to engage in were physical endeavors, which Plaintiff Rodriguez is essentially unable to do now. Id. ¶¶ 16-17. In sum, based on the testimony from Plaintiffs, it appears that Plaintiff Rodriguez's fall was life-altering, not only for her but also for her family.

Based on the foregoing testimony and evidence, the Court finds that Plaintiffs have sufficiently supported their claims for past and future pain and suffering and loss of consortium. Plaintiffs request that the Court award Plaintiff Rodriguez $82,720 in past pain and suffering damages. Dkt. No. 16 at 9. This amount is based on 940 days of past pain and suffering (as of the time of the default hearing), at a rate of $11.00 per hour (minimum wage in Florida), multiplied by eight hours per day. Id. For her future pain and suffering claim, Plaintiff Rodriguez seeks $1,027,840. Id. at 9. This amount is based on thirty-two

11

additional years of life expectancy, at a rate of $11.00 per hour, multiplied by eight hours per day. Id. Plaintiffs' testimony establishes that Plaintiff Rodriguez has suffered years of persistent, if not completely debilitating physical pain as a result of her injuries. Plaintiffs' testimony also establishes that she suffered, and likely will continue to suffer, from significant mental and emotional distress as a result of the incident. In light of the foregoing, the Court finds that Plaintiff Rodriguez should be awarded $82,720 for past pain and suffering damages and $1,027,840 for future pain and suffering damages.

Plaintiff Paret seeks $263,606.61 in damages for his loss of consortium claim. Dkt. No. 16 at 10. He bases the value of his claim on the amount of medical expenses incurred to date by Plaintiff Rodriguez, arguing that his claim is worth at least the amount of the medical expenses that have been incurred to address Plaintiff Rodriguez's injuries. Id. The testimony establishes that this incident has caused significant and permanent damage to Plaintiffs' marriage, and that Plaintiff Paret has suffered significantly because of his wife's injuries. Accordingly, the Court finds Plaintiff Paret's request for loss of consortium damages to be reasonable.

In summary, the Court awards Plaintiff Rodriguez a total of $1,416,666.61 in damages, comprised of $253,606.61 for past medical expenses, $52,500 for future medical expenses, $82,720 in past pain and suffering damages and $1,027,840 for future pain and suffering. The Court awards Plaintiff Paret $253,606.61 for his loss of consortium.

Accordingly, Plaintiffs' motion for default judgment, dkt. no. 11, is hereby **GRANTED**, and default judgment is entered against Defendant pursuant to Federal Rule of Civil Procedure 55(b). The Clerk is **DIRECTED** to enter judgment in favor of Plaintiff Rodriguez in the amount of $1,416,666.61 and enter judgment in favor of Plaintiff Paret in the amount of $253,606.61. The Clerk is further **DIRECTED** to close this case.

**SO ORDERED**, this ___27___ day of February, 2023.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA